## WILLIAM HURD *versus* ALLEN C. CURTIS *et al.*

The several owners of mills drawing water from the same stream by means of the same dam, entered into an indenture in which, for themselves, their heirs, administrators and assigns respectively, they covenanted with each other, and their respective heirs, administrators and assigns, that they would erect and use wheels of a certain construction and limited power, in their respective mills. It was *held*, that there was no privity of estate between the parties to the indenture, and consequently that the covenant did not run with the land and bind the grantee of one of the mills.

ACTION of covenant. The declaration recites, that in 1816, an indenture of four parts was made between Simon Elliot and Solomon Curtis, of the first part, Moses Grant, of the second, Hurd, the plaintiff, and Charles Bemis, of the third, and John Ware, of the fourth, owners of the mills and mill privileges on the upper dam of Newton Lower Falls, to wit, two paper-mills and a saw-mill, with their mill privileges, on the Needham side of the river, and four paper-mills, one fulling-mill and one saw mill with their mill privileges, on the Newton side, for the purpose of fixing the quantity of water which the several parties should have a right to draw at their respective mills and mill privileges, to regulate the use of the same, and for some other purposes therein set forth, did for themselves, their heirs, administrators and assigns, respectively covenant and agree to and with each other and their respective heirs, administrators and assigns, that the six paper-mills and the fulling-mill, should have the first and exclusive right to the use of the water, when no more ran to the paper mills and fulling-mill then erected and used, or that might be erected and used on the six paper-mill privileges and fulling-mill privilege, than should be necessary to work them to advantage, and that the saw-mill owned by Hurd and Bemis should have the second right of water, or the first right to the overplus water ; that all the paper-mills and the fulling-mill, then erected or that might be erected, should be altered and built with breast-wheels, each for a power equal to carrying two paper engines, in the paper-mills, and for a power equal to carrying a fulling and wool-carding machine, in the fulling-mill, that all the gates of all the mills or breast-wheels, should be drawn from the same level,

and should be on a level with some permanent mark, to be made by consent of the parties ; that the respective parties, and their heirs and assigns, should have a right to substitute and erect any other mills, works or machinery, in the place of those then erected, provided the new mills, works and machinery should require no greater power than the mills, works and machinery which the parties had a right to erect and use by virtue of the indenture. The declaration then avers that, at the time of the making of the indenture, the plaintiff was the owner of one undivided half of the saw-mill on the Newton side, and of the first right to the overplus water, and that Bemis was the owner of the other undivided half ; that in 1817, Bemis conveyed his half to the plaintiff ; that the two paper-mills and paper-mill privileges on the Newton side, which belonged to Eliot and Solomon Curtis, and the fulling-mill, with the privilege of water to work a fulling and wool-carding machine, which belonged to Ware, have, since the making of the indenture, been conveyed to the defendants, and these two paper-mill privileges and the fulling-mill privilege have, for eleven years last past, been used and occupied by the defendants ; that the defendants had due notice and full knowledge of the covenants, and agreements in the indenture set forth, on the part of Ware, Eliot and S. Curtis, and their respective heirs, administrators and assigns, to be kept and performed, and that the same are binding upon the defendants ; yet that the defendants have erected and used and now use, on their two paper-mill privileges, breast-wheels constructed for a power much more than equal to carrying two paper engines in each of their paper-mills, to wit, for a power equal to carrying six paper engines in each of their paper-mills, and have actually carried the same, and on the fulling-mill privilege they have erected and used breast-wheels for a power more than equal to carrying one fulling and wool-carding machine, to wit, for a power equal to carrying four fulling and wool-carding machines, and have actually carried the same ; and have also substituted and actually used in the place of the mills, works and machinery used on the two paper-mill privileges and the fulling-mill privilege, at the time of the making of the indenture, others which require a much greater power to carry the same than those

which the defendants have a right to erect and use thereon by virtue of the indenture ; whereby the plaintiff has lost the use and benefit of his saw-mill and of his first right to the overplus water, as secured to him by the indenture.

The defendants demurred.

*J. Mason* and *F. Dexter*, in support of the demurrer, said that there was no privity of estate between the plaintiff and the defendants, that the covenants therefore did not run with the land, and consequently that the defendants, who were not a party to the indenture, were not bound by the covenants. *Spencer's case*, 5 Coke, 16 ; *Keppell* v. *Bailey*, 2 Mylne & Keen, 517, 538 ; Platt on Cov. 461, 468, 469, 475, 493 ; *Webb* v. *Russell*, 3 T. R. 393 ; Sugd. on Vend. c. 13 ; *Stokes* v. *Russell*, 3 T. R. 678 ; *Russell* v. *Stokes*, 1 H. Bl. 562 ; *Holford* v. *Hatch*, 1 Dougl. 183 ; *Roach* v. *Wadham*, 6 East, 289 ; 1 Wms's Saund. 241, note 6 ; *The Mayor of Congleton* v. *Pattison*, 10 East, 130 ; *The Dean &c. of Windsor* v. *Gover*, 2 Saund. 302 ; *Bally* v. *Wells*, 3 Wils. 25.

*Choate* and *G. T. Bigelow*, for the plaintiff, contended that the indenture was binding on the covenantors and their assigns. The parties to the indenture were tenants in common of the easement of drawing water from the same stream by means of the same dam. This property was so situated, that it was fit and natural and competent for the parties to the indenture, to regulate and define their relative rights as they did. Their intention was to bind as well subsequent owners as themselves ; and the law will give to the indenture this effect. The objection of the want of privity is not well founded. Between the original parties to the indenture, the contract makes the privity, and whoever takes the estate takes subject to the same contract ; and this is all that is intended by privity of estate, as a requisite to make a covenant run with the land. *Horne's case*, Year Book, 2 *H.* 4. 6 ; *Walker's case*, 3 Coke, 22 ; *Spencer's case*, 5 Coke, 16, 5th res. ; *Bally* v. *Wells*, 3 Wils. 29 ; *Williams* v. *Bosanquet*, 1 Brod. & Bingh. 263 ; *Roach* v. *Wadham*, 6 East, 289 ; *Swasey* v. *Little*, 7 Pick. 296 ; *Felch* v. *Taylor*, 13 Pick. 133 ; *Kellogg* v. *Robinson*, 6 Vermont R. 276 ; *White* v. *Crawford*, 10 Mass. R. 183 ; *Fowle* v. *Bigelow*, 10 Mass. R. 379 ; *Middlemore* v. *Goodale*, Cro.

39*

---

Hurd
*v.*
Curtis.

*Jan. 15th,*
*1838, at*
*Boston.*

Hurd
v.
Curtis.

Car. 503 ; *Campbell* v. *Lewis*, 3 Barn. &. Ald. 392 ; *Vyvyan* v. *Arthur*, 1 Barn. & Cressw. 410 ; *Holmes* v. *Buckley*, Prec. Ch. 39 ; *Hills* v. *Miller*, 3 Paige, 254 ; *Trustees of Watertown* v. *Cowen*, 4 Paige, 514. [And see *Morse* v. *Aldrich*, *ante, p.* 449.] But this action may be supported on the ground of a grant. A covenant for an easement is a grant of an easement.

WILDE J. afterward drew up the opinion of the Court. The plaintiff claims damages of the defendants for a breach by them of certain covenants contained in an indenture made by and between the plaintiff and several other persons, who were owners of mills on Charles river, at Newton Lower Falls, so called, the object and intent of the indenture being to limit and regulate the use of the waters of the river at their respective mills. The defendants were not parties to the indenture, but they have since purchased of two of the covenantors their mills mentioned in the indenture, and the question is, whether they are bound as assignees by any of the covenants between the contracting parties, as is alleged in the declaration.

To make a defendant liable to an action of covenant, there must be a privity between him and the plaintiff. *Bally* v. *Wells*, 3 Wils. 29. As there is no privity of contract between the plaintiff and the defendants, it follows that the defendants are not liable in this action, unless there is a privity of estate between them. Where such a privity exists between the covenantor and the covenantee, and the covenantor assigns his estate, the privity thereby created between the assignee and the other contracting party, renders the former liable on all such covenants as regulate the mode of occupying the estate, and the like covenants concerning the same. And so if the covenantee assigns his estate, his assignee will have the benefit of similar covenants. These covenants are annexed to the land and run with it. But if there is no privity of estate between the contracting parties, the assignee will not be bound by, nor have the benefit of any covenants between the contracting parties, although they may relate to the land he takes by assignment or purchase from one of the parties to the contract. In such a case, the covenants are personal and are collateral to the land.

Covenants for title may be considered as an exception to the general rule, and the reason for the exception is very strong ; for nothing can be more manifestly just, than that the party who loses his land by a defect of title, should have the benefit of the covenants which were intended to secure an indemnity for the loss.   Such a covenant is dependent on the grant, is annexed to it, as part and parcel of the contract, and runs with the land in favor of the assigns of the grantee or covenantee ; but there is no exception to the rule, that no covenant will run with the land so as to bind the assignee to perform it, unless there were a privity of estate between the covenantor and covenantee.   " It is not sufficient," as Lord *Kenyon* remarks, in *Webb* v. *Russell*, 3 T. R. 402, " that a covenant is concerning the land, but in order to make it run with the land, there must be a privity of estate between the covenanting parties." And so the law has been laid down in all the cases turning on this point, ever since Spencer's case.

A covenant to build a house on the land of a third person, is a mere personal covenant ; but a covenant to build a house, or a new wall, on the land demised, will run with the land demised and bind the assignee, on account of the privity of estate between the covenanting parties.   *Spencer's case*, 5 Co. 16.

In *Cole's case*, 1 Salk. 196, a house had been leased, excepting two rooms, and free passage to them.   The lessee assigned, and the assignee disturbed the lessor in the passage thereto, and for this disturbance the lessor brought covenant. The action was maintained, because of the privity of estate in the passage ; but it is laid down as clear law, that if the disturbance had been in either of the rooms, no action of covenant would have lain, because the rooms were excepted.   As to them there was no privity of estate between the parties.

In *Vyvyan* v. *Arthur*, 1 Barn. & Cressw. 410, the owner of a mill, and certain lands, had leased the latter for a term of years, yielding and paying certain rents, and also doing suit to the mill of the lessor, by grinding all such corn there as should grow upon the demised premises ; and in an action of covenant brought by the assignee of the lessor of the mill and the reversion of the lands, against the lessee, it was held that the reservation of the suit to the mill was in nature of a rent ser-

vice, and that the implied covenant to render it, was a rea. covenant which would run with the land so long as the ownership of the mill and the reversion of the demised premises belonged to the same person. It seems to be difficult to reconcile this decision with the second resolution in *Spencer's case*, and with other cases in which it has been decided that a covenant of a lessee to build a house upon the land of the lessor, not being parcel of the demise, is a collateral covenant not binding on the assignee. The distinction may be between covenants of this sort which are in the nature of rent, and those which are not. But however this may be, the decision does not impugn, but confirms the doctrine laid down in all the cases, that the assignee is not bound by, nor is he entitled to the benefit of a covenant, unless there is a privity of estate between the covenanting parties.

Considering this principle as well established by the cases cited, and many others not adverted to, we are of opinion that this action cannot be maintained, as there was no privity of estate between the covenanting parties. Their estates were several, and there was no grant of any interest in the real estate of either party, to which the covenants could be annexed. The stipulations in the indenture cannot be construed as grants and covenants at the same time. If they were grants, then an action of covenant is not the proper remedy for the violation of them ; and if covenants, the assignee is not bound, for want of privity of estate between the parties.

Nor can one covenant be considered as a grant, and the other as a covenant, for the stipulations are mutual, and if one is to be construed as a grant, the other should be construed in the same manner. If the stipulation that one party is to have the first preference of the use of the water for certain mills, is to be construed as a grant, the like stipulation, that the other party shall have the second preference, cannot consistently be construed as a covenant. And we ought not to give a strained construction to the indenture, for the purpose of extending the obligation of the contract to those who were not parties thereto. All the stipulations are covenants in form, were doubtless considered as such by the contracting parties, and must be so construed. As such they are mere personal covenants, accord-

ing to all the authorities, and cannot be otherwise construed, without determining that all covenants concerning lands are real covenants, and binding on the assignee, however remote; which certainly cannot be maintained, either upon authority or upon principle. Such an extension of the obligation of covenants might be productive of great mischief and confusion of rights and obligations of the purchasers and owners of real estate.

*Declaration adjudged insufficient.*